## LEAH NESTICO *v.* BRETT A. WEYMAN ET AL.*

Superior Court, Judicial District of Hartford
File No. CV-09-6003675

* Affirmed. *Nestico* v. *Weyman,* 140 Conn. App. 499, 59 A.3d 337 (2013).

Memorandum filed May 20, 2011

*Proceedings*

*James P. Brennan*, for the plaintiff.

*William D. Catalina* and *Craig A. Fontaine*, for the defendants.

SCHOLL, J. This is a medical malpractice action in which the defendants, Brett A. Weyman and Connecticut Maxillofacial Surgeons, LLC, have moved to dismiss the action three times. Before the court is the defendants' third motion to dismiss. In the defendants' first motion to dismiss dated May 27, 2009, the defendants claimed that the action should be dismissed because the plaintiff, Leah Nestico, had failed to comply with the requirements of General Statutes § 52-190a in that

the opinion attached to the complaint was not authored by a " 'similar health care provider' " and did not set forth a detailed basis for the conclusion of medical negligence. That motion was denied on June 24, 2009. After the Appellate Court's decision in *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 979 A.2d 1066 (2009), aff'd, 300 Conn. 1, 12 A.3d 865 (2011), the defendants filed another motion to dismiss dated December 4, 2009, alleging that the plaintiff had failed to comply with the requirements of § 52-190a in that the opinion attached to the complaint was not authored by a " 'similar health care provider' . . . ." That motion was denied on January 4, 2010. The court held: "Grounds for dismissal is discretionary. Paragraph 16 (h) of complaint involves plastic surgery, which the opinion letter covers, by a plastic surgeon; agree with Judge Langenbach in [*Tutillo* v. *Day Kimball Hospital*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X03-CV-06-5009722 [(*Langenbach, J.*) (November 26, 2007) (44 Conn. L. Rptr. 570)]. Distinguished from [*Bennett* v. *New Milford Hospital, Inc.*, supra, 535]. Plaintiff given 60 days to obtain an opinion from an oral maxillofacial surgeon if plaintiff deems it necessary." In the defendants' third motion to dismiss, dated April 29, 2011, they allege the same grounds as alleged in their previous motions, that is, that the plaintiff had failed to comply with the requirements of § 52-190a in that the opinion attached to the complaint was not authored by a " 'similar health care provider' . . . ." The defendants claim that their motion should be granted based on the Supreme Court's recent decision in *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 12 A.3d 865 (2011).

The plaintiff argues that this court should not reconsider the issue raised in this latest motion to dismiss based on the law of the case doctrine. "In essence [the doctrine] expresses the practice of judges generally to

refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . This principle has been frequently applied to an earlier ruling during the pleading stage of a case . . . . According to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law. . . . This court has determined that although a judge should be hesitant to rule contrary to another judge's ruling, he or she may do so [n]evertheless, if the case comes before him [or her] regularly and [the judge] becomes convinced that the view of the law previously applied by [a] coordinate predecessor was clearly erroneous and would work a manifest injustice if followed . . . . By way of example, this court has noted that [t]he adoption of a different view of the law by a judge in acting upon a motion for summary judgment than that of his [or her] predecessor . . . is a common illustration of this principle. . . . From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Atkinson*, 283 Conn. 243, 249–50, 926 A.2d 656 (2007).

Although the law of the case doctrine itself does not prohibit this court from considering an issue already ruled upon by other judges, a review of the recent pronouncements of the Supreme Court in *Bennett* also reveals why this court should not be bound by the decisions on the previous motions to dismiss.

Section 52-190a provides: "(a) No civil action . . . shall be filed to recover damages resulting from personal injury . . . whether in tort or in contract, in which it is alleged that such injury . . . resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . . The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . . (c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

The defendants renew their motion to dismiss based on the Supreme Court's recent decision in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1, in which

the court interpreted the provisions of § 52-190a. There, the court held that "because the plaintiff alleged in his complaint that the defendant was a specialist in emergency medicine, the author of the opinion letter pursuant to § 52-190a (a) had to be a similar health care provider as that term is defined by [General Statutes] § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)." Id., 12. The court also held "that § 52-190a (c) requires the dismissal of medical malpractice complaints that are not supported by opinion letters authored by similar health care providers." Id., 25. The court noted that "we agree with the Appellate Court that strictly adhering to the legislature's articulation of who is a similar health care provider may be harsh to would-be plaintiffs, but is not absurd or unworkable. . . . Specifically, the text of the related statutes and the legislative history support the Appellate Court's determination that, unlike § 52-184c (d), which allows for some subjectivity as it gives the trial court discretion in determining whether an expert may testify, § 52-190a establishes objective criteria, not subject to the exercise of discretion, making the prelitigation requirements more definitive and uniform and, therefore, not as dependent on an attorney or self-represented party's subjective assessment of an expert's opinion and qualifications. . . . Accordingly, we conclude that, in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)." Id., 21. Consequently, the *Bennett* court upheld the dismissal of the case against the defendant physician, a specialist in emergency medicine, since the opinion letter filed with the complaint was authored by a board certified general surgeon who had qualifications in surgical critical care and trauma surgery.

Therefore, contrary to the court's ruling denying the second motion to dismiss, the Supreme Court has now made it clear that it is not within the court's discretion to deny a motion to dismiss a medical malpractice complaint when it is not supported by the necessary opinion. Consequently, this court may consider the defendants' third motion to dismiss and is not bound by the rulings on the previous motions to dismiss. See also *Torres* v. *Carrese*, Superior Court, judicial district of Fairfield, Docket No. 065011368 (*Levin, J.*) (March 14, 2011) (holding that the court may reconsider the efficacy of an opinion letter, in light of the Supreme Court's decision in *Bennett*, even during jury selection, and that *Bennett* may be applied retroactively).

Here, the plaintiff alleges in her complaint that the defendant Weyman "held himself out and still holds himself out to the public as a competent, skillfull oral surgeon . . . ." (Complaint, paragraph 4.) In fact, the parties agree that he is a board certified oral and maxillofacial surgeon. The plaintiff admits that the opinion letter here was not authored by a "similar health care provider" within the general provisions of § 52-184c (c), in that it is not authored by a board certified oral and maxillofacial surgeon. Section 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; *provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.*" (Emphasis added.) The plaintiff

claims that her action falls within the exception provision to the statute, in that it is alleged that the defendants provided treatment or diagnosis in the area of plastic surgery. Therefore, the opinion letter, which is authored by a plastic surgeon who is also an otolaryngologist and dentist, although not board certified in any dental specialty, is sufficient.

The essence of the plaintiff's claim is the allegations in her complaint that after Dr. Weyman extracted her four wisdom teeth, she "contacted Weyman's office by telephone concerning the rash on the outside of her left cheek and was told by a person from Weyman's and/or the Practice's office over the telephone that the condition was not related to the surgery." (Complaint, paragraph 10.) The plaintiff claims that "by choosing to completely ignore and dismiss the plaintiff's complaints about her post-operative condition at the location of the surgery and neither examine, treat nor refer her to a specialist (i.e. plastic surgeon) for the post-operative condition, the defendant, Weyman, brought himself within" the exception of the statute. (Memorandum in Support of Plaintiff's Objection to Defendants' Third Motion to Dismiss #149, pp. 7–8.) All of the other allegations of negligence cited in the complaint refer to the defendants' conduct during the surgical procedure except that the plaintiff also claims that the defendants "failed to ensure that Leah Nestico's thermal and/or pressure injury was properly treated after the injury occurred." (Complaint, paragraph 16 h.) The opinion letter attached to the complaint states: "It is my opinion that the necrosis/scar on Leah's left cheek was the result of either pressure or thermal injury that occurred during her wisdom tooth surgery. It was a deviation from the standard of care that should have been employed during tooth extraction."

The Supreme Court has not opined on the language of § 52-184c (c) upon which the plaintiff relies, although

several Superior Court judges have done so. In *Kroha* v. *LaMonica*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-98-0160366-S (July 29, 2002), Judge Sheldon discussed the exception language of § 52-184c (c) in the context of the qualifications of a witness to testify as a similar health care provider in the trial of a medical malpractice case. There, the defendant physician was board certified in internal medicine and the proffered witness was an obstetrician-gynecologist. The plaintiff claimed that the defendant was providing treatment and diagnosis for a condition which was not within her specialty. The court determined that it must decide first whether the defendant was "providing treatment or diagnosis for a condition which [was] not within h[er] specialty." (Internal quotation marks omitted.) Id. The court then went on to interpret the statutory language. The court stated: "Superficially, at least, the statute can be read to require physicians to diagnose and treat each of their patients in accordance with the standard of care that applies to the particular specialist who is ultimately responsible for diagnosing and treating the patient's actual ailment or condition. So interpreted, however, the statute would unfairly impose a form of strict liability upon any physician who agreed to treat or diagnose a patient with an unknown ailment or condition. If, for example, a patient seeking treatment for what appeared to be a common cold was actually suffering from a rare tropical disease, the internist who treated him would unwittingly expose himself to post hoc criticism and evaluation under the standard of care for doctors specializing in tropical diseases. Similarly, if the patient was actually suffering from a different disease or condition, the internist, by taking the case, would commit himself to diagnosing and treating the patient under the higher standards of those physicians who are specially trained to diagnose and treat that disease or condition.

The obvious problem with the foregoing interpretation of the statute is that it would discourage medical practitioners from doing what they do best—that is, gathering information about their patients' unsolved medical problems and finding solutions for those problems by applying professional skill and judgment to what they learn. It is highly unlikely that the legislature intended to create such a strong disincentive for doctors to accept challenging cases. In fact, an alternative reading of the statute would avoid creating this disincentive while protecting patients from risky dabbling by physicians in specialties not their own. *That reading would gear the standard of care for the treatment or diagnosis of a patient not to the actual nature of the patient's underlying problem or condition, as it is ultimately determined to be, but to the circumstances of the patient's clinical presentation and the nature of the physician's undertaking with respect to the patient in light of those circumstances. So understood, the statute would subject a physician to evaluation under the standard of care for a different medical specialist only if he undertook to treat or diagnose a patient after he learned or should have learned that the patient was suffering from a condition that was not within his own medical specialty. By embarking upon or continuing a course of diagnosis or treatment for a condition that he knows or should realize to be outside his specialty, a physician naturally creates a risk that the patient will be harmed in a way that could be avoided by referring the patient to a qualified specialist. By voluntarily stepping into the shoes of the specialist, the doctor may fairly expose his professional care and treatment of the patient to evaluation under the standard of care applicable to that specialist, and thus is appropriately held accountable for the consequences of his own ignorance or inexperience. The court believes that this interpretation of the statutory language is correct, for*

*it would treat any doctor who voluntarily engages in off-specialty practice just like any doctor who, though not board certified in an area of specialized medical practice, 'holds himself out as a specialist' in that area. General Statutes § 52-184c (c)."* (Emphasis added.) *Kroha* v. *LaMonica,* supra, Superior Court, Docket No. X02-CV-98-0160366-S. The court concluded that the defendant internist's failure to diagnose the plaintiff's pregnancy related condition, when the plaintiff had been referred to the defendant by one of the plaintiff's obstetrician-gynecologists to rule out any nonpregnancy related problems, did not provide diagnosis and treatment outside her specialty when she failed to diagnose the plaintiff's preeclampsia, a condition related to her pregnancy.

This court agrees with Judge Sheldon's interpretation of the language of the statute. The exception provision of § 52-184c (c) does not apply unless it is alleged that the defendant physician actually undertook the diagnosis and treatment of a condition not within his specialty such that his conduct should be judged against the standards of care applicable to that specialty.

Likewise, in *Torres* v. *Carrese,* supra, Superior Court, Docket No. 065011368, Judge Levin noted: "Diagnosis is defined as 'the art or act of identifying a disease from its signs and symptoms'; Merriam-Webster's Collegiate Dictionary (10th Ed. 2000); '[t]he determination of the nature of a disease, injury, or congenital defect.' T. Stedman, Medical Dictionary (28th Ed. 2006). 'Treatment is the medical or surgical management of a patient.' Id." There, the court rejected the plaintiff's argument that the exception applied to allow a malpractice case to proceed against an obstetrician-gynecologist based on an opinion letter authored by a urologist where the plaintiff's bladder and ureter were damaged during an obstetrical/gynecological procedure.

In *Lohnes* v. *Hospital of Saint Raphael*, Superior Court, judicial district of New Haven, Docket No. CV-09-5031448 (April 6, 2010) (*Wilson, J.*) (49 Conn. L. Rptr. 594), the plaintiff argued, in response to the defendants' motions to dismiss, that an opinion letter by a pulmonologist was sufficient because the defendant physician, board certified in emergency medicine, had treated the plaintiff outside of his specialty. There, the court stated: "Resolution of this motion depends on whether the plaintiff sufficiently alleged in his complaint that the defendants provided treatment or diagnosis for a condition outside of his specialty of emergency medicine and as a result, the opinion letter of a pulmonologist is sufficient under §§ 52-190a and 52-184c. . . . Superior Courts addressing this issue require the plaintiff to specifically allege in the complaint that the defendant physician acted outside of his specialty or lacked the expertise to treat the plaintiff's condition." (Internal quotation marks omitted.) Id. The court concluded: "[T]he plaintiff's claim of negligence is predicated upon the defendants' administration of Motrin despite his warnings, medical records and the red wristband, all of which he claims put the defendants on notice that he would likely suffer an adverse reaction to a NSAID. Further, he claims that after wrongfully prescribing him the Motrin, the defendants failed to act accordingly. Nowhere in the plaintiff's complaint is it alleged that the defendants failed to refer him to a physician with adequate experience in treating the symptoms that he presented with in the emergency room or that the defendants failed to competently assess that the plaintiff's condition was beyond [the defendant physician's] realm of expertise. The court declines to infer from the plaintiff's single and fleeting reference to 'treatment of his pulmonary symptoms,' that his allegations should be construed to include claims of negligence based upon the defendants' providing treatment or diagnosis for a

condition outside of the [defendant physician's] area of expertise. As a result, the court finds that the defendants are entitled to dismissal of this complaint because the author of the plaintiff's opinion letter is not a similar health care provider under § 52-184c (c)." Id.

The plaintiff cites the decision in *Tutillo* v. *Day Kimball Hospital*, supra, Superior Court, Docket No. X03-CV-06-5009722, in support of her position. There, the plaintiff sued regarding medical care and treatment her decedent received at the emergency room of a hospital and by her family physician. The defendants claimed that the opinion letter which was signed by a " 'psychiatric expert' " was insufficient since the defendants had credentials related to emergency room care and the individual doctor was a board certified family physician. Id. The court found the opinion sufficient. The court stated: "The crux of the opinion is that the health care providers in this case deviated from the standard of care in that they sought to render services outside their expertise and should have referred the decedent to a psychiatrist. Among the claims of negligence against the defendants in this case is the allegation that 'they failed to consult with and/or immediately refer the plaintiff's decedent to an appropriate specialist, including a specialist in psychiatry, for evaluation of the complaints and symptoms of which she was suffering.' (See Revised Complaint, Count One, ¶ 15.b., Count Two, ¶ 15.c.) The allegations described above can be construed as claims of negligence against the defendants based upon providing treatment for a mental health condition which was not within their specialties. As such, the 'psychiatric expert' who authored the opinion may be considered a 'similar health care provider' pursuant to § 52-184c (c)." *Tutillo* v. *Day Kimball Hospital*, supra, Superior Court, Docket No. X03-CV-06-5009722. The decision in *Tutillo* is distinguishable from this case because there are no allegations here that the defendant sought to

treat the plaintiff's skin condition or that such treatment was outside the area of the expertise of an oral surgeon. In addition, unlike in *Tutillo*, the opinion letter here does not opine that the defendants deviated from the standard of care by rendering services outside of their specialty or that they should have referred the plaintiff to a plastic surgeon. Similarly, despite the claims in her memorandum in opposition to the motion to dismiss, the plaintiff makes no such claims in her complaint.

Other Superior Court judges have found the allegations of a complaint sufficient to bring the claim within the exception provision of § 52-184c (c). In *Rivera* v. *Eastern Connecticut Health Network*, Superior Court, judicial district of Hartford, Docket No. CV-07-5011282-S (January 20, 2009) (*Hon. Jerry Wagner*, judge trial referee) (47 Conn. L. Rptr. 103), the defendant doctor claimed that he was board certified in family medicine, and the letter appended to the complaint was written by a psychiatrist. There, the court held that the opinion was sufficient, stating: "All of the plaintiff's negligence claims are derived from the same deviations from the standard of care identified by [the psychiatrist] in his written opinion. These negligence claims are all centered around the decedent's mental status and history of psychiatric health issues. They are in the realm of psychiatry, not [the defendant's] specialty of family medicine. Therefore, pursuant to § 52-184c (c) [the defendant] was 'providing treatment or diagnosis for a condition which is not within his specialty.' " Id.

In *Ellegard* v. *Hennessey*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X03-CV-06-5008281 S (March 28, 2007) (*Langenbach, J.*) (43 Conn. L. Rptr. 195), the defendant Dr. Patrick Rocco was a board certified general surgeon. "The allegations of negligence in the plaintiff's complaint are based upon one procedure conducted at Bradley Memorial Hospital where both Drs. [Brian] Hennessey and

Rocco were present. In this case, the subject of the plaintiff's complaint is an operation that resulted in the removal of her right ovary and Fallopian tube and the perforation of her uterus. The allegations of negligence against Dr. Rocco include claims that he failed to refer the plaintiff to a physician with adequate experience in taking down adhesions, and he failed to competently assess that the plaintiff's condition was beyond his realm of expertise. . . . The allegations against Dr. Rocco described above can be construed to include claims of negligence based upon providing treatment for a condition which is not within his specialty." Id. Accordingly, the court found that the written opinion met the requirements of § 52-190a even though it was authored by a board certified obstetrician-gynecologist.

Unlike *Rivera* and *Ellegard*, here, neither the allegations of the complaint nor the claimed breaches of the standard of care set forth in the opinion letter indicate that the defendant provided treatment or diagnosis for the plaintiff's skin condition and therefore stepped into the shoes of a plastic surgeon. The complaint simply alleges that the defendant told the plaintiff her condition was not related to the oral surgery. Neither Dr. Weyman nor his practice, Connecticut Maxillofacial Surgeons, LLC, are alleged to have provided any diagnosis or treatment of that condition. Consequently, they never undertook to treat the plaintiff's condition such that their conduct should be judged against that of a plastic surgeon. In addition, the opinion letter, although authored by a plastic surgeon, does not criticize any conduct of the defendant in that area. The letter instead focuses on the author's experience with molar extractions. He states: "I have significant oral surgery experience with third molar extraction. Thermal injuries to tissue can occur where electrocautery is excessive, grounding is inadequate, or retraction with pressure is excessive. Taking precautions to avoid these is required to meet

the minimal standard of care. Excessive pressure or retraction on the skin can result in necrosis of tissue and must be protected against. It is my opinion that the necrosis/scar on Leah's left cheek was the result of either pressure or thermal injury that occurred during her wisdom tooth surgery. It was a deviation from the standard of care that should have been employed during tooth extraction." Consequently, even the author of the opinion letter does not provide any opinion as to any breaches of the standard of care of a plastic surgeon but instead seeks to opine upon the conduct of the defendants during the plaintiff's oral surgery, of which the author is not qualified to opine, pursuant to § 52-184c (c), as to Dr. Weyman.

This conclusion applies equally to the defendant Connecticut Maxillofacial Surgeons, LLC, as to Dr. Weyman because the complaint claims that Dr. Weyman is the LLC's "member, servant, agent, employee and/or a representative" and that the LLC "was responsible for the conduct and services of its members, servants, agents, employees and/or . . . representatives." (Complaint, paragraphs 3, 5.) The allegations of the complaint that the plaintiff "was told by a person from Weyman's and/or the Practice's office over the telephone that the condition was not related to the surgery"; (Complaint, paragraph 10); do not implicate the conduct, nor does the opinion letter attempt to do so, of anyone other than an oral and maxillofacial surgeon or someone working under his direction. "[T]he majority of Superior Court decisions have held that where the counts sought to be dismissed contain allegations of the principal being vicariously liable for its agent, whether stated expressly or by incorporation of prior counts, if the opinion letter is sufficient as to the agent physician, it is also sufficient to satisfy § 52-190a (a) as to the principal nonindividual defendants." (Internal quotation marks omitted.) *Smith* v. *Midstate Medical Center*, Superior Court, judicial

district of New Haven, Docket No. CV-10-6013753 (April 14, 2011) (*Wilson, J.*). Likewise, where such an opinion letter is deficit as to the agent it is deficit as to its principal. In any event, the opinion letter does not address any conduct of the defendants after the surgery.

For all the reasons stated above, the Motion to Dismiss is granted since the opinion letter attached to the complaint is not authored by a similar health care provider within the meaning of § 52-184c.