******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GEORGE LABISSONIERE, COEXECUTOR (ESTATE OF ROBERT LABISSONIERE), ET AL. *v.* GAYLORD HOSPITAL, INC., ET AL.
## (AC 39681)

Sheldon, Elgo and Harper, Js.*

### *Syllabus*

The plaintiffs, the coexecutors of the estate of R, sought to recover damages for the alleged medical malpractice of the defendant hospital and several individual physicians. The plaintiffs, pursuant to statute (§ 52-190a), appended to their original complaint an opinion letter stating that there appeared to be evidence of medical negligence, which was authored by M, a physician and general surgeon who was board certified in surgery. Thereafter, the plaintiffs filed an amended complaint in which they alleged that the defendant physicians were board certified in internal medicine and that the treatment and diagnosis of R was within the medical specialty of surgery. The defendants filed motions to dismiss, with supporting affidavits, in which they claimed that the court lacked personal jurisdiction over them because M was not a "similar health care provider" to them as defined by statute (§ 52-184c [c]). The trial court granted the motions to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Held*:

1. The plaintiffs could not prevail on their claim that the trial court improperly considered the defendants' supporting affidavits and thereby applied an incorrect legal standard in deciding the defendants' motions to dismiss, which was based on their claim that the issues here did not involve a factual dispute concerning personal jurisdiction that was not determinable on the face of the record; although the plaintiffs alleged in their amended complaint that the defendant physicians were board certified in internal medicine, it was not improper for the court to consider the affidavits in deciding the motions to dismiss because the affidavits provided independent evidence of the physicians' medical specialty, and the undisputed facts contained in the defendants' affidavits supplemented the allegations contained in the amended complaint.

2. The trial court properly granted the defendants' motions to dismiss: where, as here, it was undisputed that the defendant physicians were board certified in internal medicine and not surgery, § 52-184c (c) required the plaintiffs to obtain an opinion letter from an expert who was trained and experienced in internal medicine and was board certified in internal medicine, which they failed to do, as M was not board certified in internal medicine, and, contrary to the plaintiffs' claim, the trial court did not require that the opinion letter state that the physicians were acting outside the scope of their medical specialty and, instead, properly determined that the plaintiffs failed to expressly allege in their amended complaint that the physicians were acting outside the scope of their medical specialty so as to qualify for an exception in § 52-184c (c) that applies when a physician provides treatment or diagnosis for a condition that is not within the physician's specialty, and because such an allegation was absent from the amended complaint, the trial court, which looked to M's affidavit and the opinion letter only as alternative sources for such allegation and could not find the necessary evidence in those documents, properly concluded that the opinion letter was not compliant with § 52-190a (a); furthermore, the exception in § 52-184c (c) did not apply here, where R was admitted to the hospital for medical care and rehabilitation following a hip replacement surgery and nothing contained in the plaintiffs' complaint suggested that the physicians were acting as surgeons and not acting as internists when they diagnosed and treated R's postoperative condition.

Argued February 8—officially released June 5, 2018

### *Procedural History*

Action to recover damages for the defendants' alleged medical malpractice, and for other relief, brought to

the Superior Court in the judicial district of Tolland, where the court, *Cobb*, *J.*, granted the defendants' motions to dismiss, and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Keith A. Yagaloff*, for the appellants (plaintiffs).

*Thomas O. Anderson*, with whom were *Kyle W. Deskus* and, on the brief, *Cristin E. Sheehan*, for the appellees (defendant Eileen Ramos et al.).

*Michael G. Rigg*, for the appellee (named defendant).

*Opinion*

HARPER, J. This appeal arises out of a medical malpractice action brought by the plaintiffs, George Labissoniere and Helen Civale, coexecutors of the estate of Robert Labissoniere (decedent), against the defendants, physicians Moe Kyaw, Madhuri Gadiyaram, and Eileen Ramos (physicians), and their employer, Gaylord Hospital, Inc. (hospital). The plaintiffs appeal from the judgment of the trial court dismissing their amended complaint for lack of personal jurisdiction. On appeal, the plaintiffs claim that the court erred by (1) failing to apply the appropriate legal standard for a motion to dismiss, and (2) determining that the author of the plaintiffs' opinion letter was not a similar health care provider on the basis of their related claim that they had alleged that the defendants were acting outside of their medical specialty such that their conduct should be judged against the standard of care applicable to that specialty. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our disposition of this appeal. The plaintiffs commenced this action against the defendants on April 28, 2015. In their original complaint, the plaintiffs alleged that the decedent was admitted to the hospital on February 14, 2013, for medical care and rehabilitation following hip replacement surgery that had been performed at St. Francis Hospital. The plaintiffs alleged that while under the care of the physicians, the decedent suffered from a retroperitoneal hematoma, a postoperative condition that resulted in irreversible nerve damage, as well as hemorrhagic shock and multiorgan failure, requiring the decedent to be transferred back to St. Francis Hospital as an emergency admission on March 11, 2013.[1]

In an attempt to comply with General Statutes § 52-190a (a),[2] the plaintiffs appended to their original complaint an opinion letter authored by David A. Mayer, a physician and general surgeon who was board certified in surgery. The physicians and the hospital subsequently filed motions to dismiss pursuant to Practice Book § 10-30 (a) (2). In their respective motions, the defendants argued that because Mayer was board certified in surgery and not internal medicine, he was not a "similar health care provider," as defined in General Statutes § 52-184c,[3] and, therefore, the court lacked personal jurisdiction over them.[4] Included with the defendants' motions were affidavits,[5] which established that the physicians are board certified in internal medicine and are not surgeons, that surgeries are not performed at the hospital, and that there are no surgeons on staff at the hospital.

On November 20, 2015, the plaintiffs filed a request for leave to file an amended complaint together with a

proposed amended complaint in which they alleged that the physicians were board certified in internal medicine and that the treatment and diagnosis of the decedent was within the medical specialty of surgery. The plaintiffs did not attach to their amended complaint a new or amended opinion letter, nor did they explicitly allege that the defendants had acted outside the scope of their specialty of internal medicine.

The physicians and the hospital subsequently filed amended motions seeking dismissal of the plaintiffs' amended complaint. The defendants again alleged that Mayer was not a similar health care provider under § 52-184c. The plaintiffs objected, arguing that the physicians were acting as surgeons during their diagnosis and treatment of the decedent's retroperitoneal hematoma. Attached to their objection was Mayer's affidavit, in which he stated that the decedent's condition was a postoperative condition that required consultation with a surgeon. The plaintiffs argued that their amended complaint and Mayer's affidavit demonstrated that the decedent's condition was within the specialty of surgery and, therefore, that the physicians had acted outside the scope of their medical specialty and that Mayer was a similar health care provider under § 52-184c (c).

During oral argument on the defendants' motions, the court asked the plaintiffs' counsel several times to identify where the plaintiffs had alleged that the defendants acted outside the scope of their specialty of internal medicine. The plaintiffs' counsel then cited multiple paragraphs from the amended complaint, which stated that the physicians are board certified in internal medicine and provided the decedent with treatment and diagnosis for a postoperative condition that was within the specialty of surgery. The court responded that the amended complaint "doesn't say that the doctors were acting outside of their specialty [of internal medicine]. It just says that this happened to be a surgery issue."

The court granted the defendants' amended motions to dismiss. In so doing, the court reasoned that "neither the amended complaint (filed after the court allowed discovery on the issues involved in the motion to dismiss) nor the surgeon's written opinion letter allege or state that the defendants were acting outside their specialty of internal medicine in treating the [decedent] or that they undertook the diagnosis and treatment of a condition outside of their specialty such that their conduct should be judged against the standards of care applicable to that specialty. Such an allegation and expert opinion is necessary to fall within the exception contained in [§ 52-184c (c)]. . . . Therefore, there being no such allegation or expert opinion, this case must be dismissed as to all defendants." (Citation omitted.) This appeal followed.

Before we address the plaintiffs' claims on appeal,

we set forth the well settled standard of review. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10–11, 12 A.3d 865 (2011).

"In reviewing a challenge to a ruling on a motion to dismiss . . . [w]hen the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct. . . . Because there is no dispute regarding the basic material facts, this case presents an issue of law, and we exercise plenary review." (Internal quotation marks omitted.) *Doyle* v. *Aspen Dental of Southern CT, PC*, 179 Conn. App. 485, 491–92, 179 A.3d 249 (2018). "Our review of a trial court's ruling on a motion to dismiss pursuant to § 52-190a is plenary." *Torres* v. *Carrese*, 149 Conn. App. 596, 608, 90 A.3d 256, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

I

The plaintiffs' first claim is that the trial court applied an incorrect legal standard in deciding the defendants' motions to dismiss. The plaintiffs argue that it was improper for the court to consider the affidavits that the defendants attached to their motions because "the issues here do not involve factual issues concerning personal jurisdiction that are not determinable on the face of the record." The plaintiffs aver that "the correct standard on [these] motion[s] is that the court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) We disagree that the court erred by considering the defendants' affidavits.

Practice Book § 10-30 (a) provides in relevant part: "A motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person . . . ." A motion to dismiss "shall always be filed with a supporting memorandum of law and, where appropriate, with supporting affidavits as to facts not apparent on the record." Practice Book § 10-30 (c). "[I]f the complaint is supple-

mented by undisputed facts established by affidavits in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations in the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 522–23, 98 A.3d 55 (2014).

The court did not err when it considered the defendants' affidavits in deciding their motions to dismiss. Although the plaintiffs alleged in their amended complaint that the physicians were board certified in internal medicine, it was not improper for the court to consider the affidavits in deciding the amended motions because the affidavits provided independent evidence of the physicians' medical specialty. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21. Thus, the undisputed facts contained in the defendants' affidavits supplemented the allegations contained in the amended complaint. The plaintiffs also were able to conduct discovery and submit Mayer's counteraffidavit, which did not undermine the conclusion established by the defendants' affidavits that the court lacked jurisdiction. Therefore, it was appropriate for the court to consider the defendants' affidavits in granting their motions to dismiss for lack of personal jurisdiction.

II

The plaintiffs next raise the interrelated claims that the court erred in determining that (1) the opinion letter did not comply with § 52-190a, and (2) the exception under § 52-184c (c) was not applicable. The defendants argue that because the plaintiffs did not allege that the physicians were acting outside the scope of their medical specialty of internal medicine, the exception under § 52-184c (c) did not apply, and the plaintiffs were thus obligated to obtain an opinion letter authored by a physician board certified in internal medicine. We agree with the defendants.

We begin by discussing the relevant statutory provisions. "Section 52-190a (a) provides that before filing a personal injury action against a health care provider, the attorney or party filing the action must make a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . . To show a good faith belief, the complaint must be accompanied by a written

and signed opinion of a similar health care provider, as defined in § 52-184c, stating that there appears to be evidence of medical negligence and including a detailed basis for the formation of that opinion. . . . To determine if an opinion letter meets the requirements of § 52-190a (a), the letter must be read in conjunction with § 52-184c (c), which defines the term similar health care provider. . . . For health care providers who are board certified or who hold themselves out as specialists . . . § 52-184c (c) defines similar health care provider as one who: (1) [i]s trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Torres* v. *Carrese*, supra, 149 Conn. App. 608–609.

Here, it is undisputed that the physicians were board certified in internal medicine and not surgery. On the basis of the physicians' board certification, § 52-184c (c) required the plaintiffs to obtain an opinion letter from an expert who: (1) is trained and experienced in internal medicine; and (2) is board certified in internal medicine. The plaintiffs failed to obtain an opinion letter from a similar health care provider because Mayer is not board certified in internal medicine. Therefore, the opinion letter that the plaintiffs appended to their original complaint did not comply with the requirements of § 52-190a (a) and dismissal was required. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 28–30.

The plaintiffs rely on the exception in § 52-184c (c), which provides that "if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a similar health care provider." The trial court properly determined that the plaintiffs failed to expressly allege in their amended complaint that the physicians were acting outside the scope of their medical specialty.

The trial court did not, as the plaintiffs claim on appeal, create a requirement that the *opinion letter* state that the physicians were acting outside the scope of their medical specialty. As the plaintiffs point out, doing so would require an expert to opine on the standard of care for a specialty not within his or her expertise. What the court sought, however, was some basis from which it could glean that the physicians here were acting outside the scope of internal medicine. Because such an allegation was absent from the amended complaint, the court looked to Mayer's affidavit and the opinion letter only as alternative sources for the allegation that the defendants were acting outside the scope of their medical specialty. The court could not find the necessary evidence in these documents and thus properly concluded that the opinion letter was not com-

pliant with § 52-190a (a).

The plaintiffs further argue that the exception in § 52-184c (c) applies because they alleged that the treatment and care the physicians rendered to the decedent fell "within the specialty of surgery" and, therefore, the physicians were acting outside of their specialty of internal medicine. This court's opinion in *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012), informs our resolution of this claim. In *Lohnes*, the plaintiff was admitted to the emergency department of the defendant hospital for respiratory issues. Id., 71. The plaintiff suffered an allergic reaction to the medication the defendant physician administered to him, and filed suit for medical negligence. Id., 71–72. The plaintiff attached to his complaint an opinion letter from a pulmonologist, and the defendants moved to dismiss on the ground that the opinion letter was not authored by a similar health care provider within the meaning of §§ 52-190a and 52-184c. Id. In support of his motion, the defendant physician submitted an affidavit in which he stated that he was board certified in emergency medicine. Id. The trial court subsequently granted the defendants' motions. Id.

On appeal in *Lohnes*, the plaintiff argued, inter alia, that the defendant physician acted outside of his medical specialty of emergency medicine when he rendered care to the plaintiff. Id., 75. This court rejected this claim, stating that the plaintiff conceded before the trial court that "his complaint did not contain an express allegation that [the defendant physician] was practicing outside of his field of practice. In light of that concession, the [trial] court declined to infer from the plaintiff's single and fleeting reference to treatment of [the plaintiff's] pulmonary symptoms that the complaint contained any specific allegations of negligence based on [the defendant physician's] having acted outside of his area of specialty." (Internal quotation marks omitted.) Id., 78. This court further reasoned that it was undisputed that (1) the plaintiff sought treatment from the emergency department, not a pulmonologist; (2) the plaintiff complained of shortness of breath and tightness in his chest, and was treated for those symptoms; and (3) nothing on the face of the complaint suggested the defendant physician rendered pulmonology treatment as opposed to emergency medical treatment. See id., 78–79.

Similarly, in the present case, the decedent was admitted to the hospital for "medical care and rehabilitation" following a hip replacement, the actual surgical procedure having been performed at another hospital, by an independent surgeon. While under the defendants' care, the decedent developed complications, which required treatment and diagnosis by the physicians. Although the physicians appear to have initially misdi-

agnosed the decedent's postoperative condition, nothing contained in the plaintiffs' complaint or opinion letter suggests that the physicians were not acting as internists. In fact, the crux of the plaintiffs' complaint was that the physicians were negligent in their initial assessment of the decedent's condition, not that the physicians were negligent in performing a surgical procedure.

The plaintiffs have alleged that the condition from which the decedent suffered was a postsurgical complication, and thus that the physicians were acting within the specialty of surgery and outside their specialty of internal medicine. The plaintiffs overlook, however, that a broad specialty such as internal medicine often overlaps with other medical specialties. Under the plaintiffs' argument, there likely never would be a situation where a physician's treatment of a patient falls within the specific specialty of internal medicine, as physicians who are board certified in that specialty are often called upon to diagnose and treat a variety of conditions that could fall within a variety of medical specialties.[6] Our case law has declined to create such scenarios. See, e.g., *Lohnes* v. *Hospital of Saint Raphael*, supra, 132 Conn. App. 79 ("[I]n light of the fact that emergency medicine physicians are charged with rendering care to and treating patients with a potentially limitless variety of symptoms or injuries, the plaintiff's argument, namely, that the defendant was acting outside his area of specialty, potentially could yield a situation where no condition or illness would be considered within the scope of emergency medicine. Accordingly, there is no basis for the claim that, in treating the plaintiff for his symptoms in the emergency department of the hospital, [the defendant physician] was acting outside his specialty of emergency medicine.")

Because the plaintiffs here have not alleged that the physicians acted outside the scope of their specialty of internal medicine, the exception to the definition of similar health care provider in § 52-184c (c) does not apply. Accordingly, the plaintiffs were required to obtain an opinion letter from an expert who (1) had training and experience in internal medicine, and (2) was board certified in internal medicine. *Torres* v. *Carrese*, supra, 149 Conn. App. 609. The plaintiffs did not provide such a letter and, therefore, the court properly granted the defendants' motions to dismiss for lack of personal jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

* This case was argued before a panel of this court consisting of Judge Sheldon, Judge Bright, and Justice Harper. Thereafter, Judge Bright recused himself from consideration of this case and Judge Elgo was added to the panel. Judge Elgo has read the briefs and the record, and has listened to a recording of the oral argument prior to participating in this decision.

[1] Unrelated medical issues caused the death of the decedent. The plaintiffs

claim malpractice only in regard to the defendants' diagnosis and treatment of the retroperitoneal hematoma and associated injuries.

[2] General Statutes § 52-190a provides in relevant part: "(a) No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death . . . whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . .

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[3] General Statutes § 52-184c provides in relevant part: "(a) In any civil action to recover damages resulting from personal injury or wrongful death . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. . . .

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a similar health care provider is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a similar health care provider. . . ." (Internal quotation marks omitted.)

[4] Similar health care provider status of an institution is determined by the specialty of its alleged agent. See *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 719–21, 104 A.3d 671 (2014).

[5] Each of the physicians submitted an affidavit in support of their motion to dismiss. Attached to the motion of the hospital was the affidavit of Stephen Holland, the Vice President and Chief Medical Officer of the hospital.

[6] Cases from our Superior Court have highlighted similar concerns. In *Kroha* v. *LaMonica*, Superior Court, judicial district of Waterbury, Docket No. X02-CV-98-0160366-S (July 29, 2002), the court explained that, under an argument similar to the one advanced by the plaintiffs' here, "the statute would unfairly impose a form of strict liability upon any physician who agreed to treat or diagnose a patient with an unknown ailment or condition. If, for example, a patient seeking treatment for what appeared to be a common cold was actually suffering from a rare tropical disease, the internist who treated him would unwittingly expose himself to post hoc criticism and evaluation under the standard of care for doctors specializing in tropical diseases. . . . The obvious problem with the foregoing interpretation of the statute is that it would discourage medical practitioners from doing what they do best—that is, gathering information about their patients' unsolved medical problems and finding solutions for those problems by applying professional skill and judgment to what they learn. It is highly unlikely that the legislature intended to create such a strong disincentive for doctors to accept challenging cases. In fact, an alternative reading of the statute would avoid creating this disincentive while protecting patients from risky dabbling by physicians in specialties not their own. . . . So understood, the statute

would subject a physician to evaluation under the standard of care for a different medical specialist *only* if he undertook to treat or diagnose a patient after he learned or should have learned that the patient was suffering from a condition that was not within his own medical specialty." (Emphasis in original.) See also *Nestico* v. *Weyman*, 52 Conn. Supp. 463, 471–73, 473, 59 A.3d 338 (2011) (court agreed with and extensively quoted *Kroha*, concluding that "[t]he exception provision of § 52-184c does not apply unless it is alleged that the defendant physician actually undertook the diagnosis and treatment of a condition not within his specialty such that his conduct should be judged against the standards of care applicable to that specialty"), aff'd, 140 Conn. App. 499, 59 A.3d 337 (2013).

---