******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GEORGE LABISSONIERE, COEXECUTOR (ESTATE OF ROBERT LABISSONIERE) ET AL. *v.* GAYLORD HOSPITAL, INC., ET AL.
## (AC 42581)

Lavine, Moll and Sheldon, Js.

### *Syllabus*

The plaintiffs, coexecutors of the estate of R, sought to recover damages for the alleged medical malpractice of the defendants, a hospital, a physician practice group, and several individual physicians. The plaintiffs, pursuant to statute (§ 52-190a), appended to their complaint an opinion letter authored by M, a physician and general surgeon who was board certified in surgery; the individual physicians were board certified in internal medicine. The plaintiffs alleged in their complaint that the physicians' diagnosis and postsurgical treatment of R was within the medical specialty of surgery, that the physicians were acting outside the scope of their specialty and, therefore, M could be considered a "similar health care provider" as defined by statute (§ 52-184c (c)). The defendants filed motions to dismiss in which they claimed, inter alia, that the trial court lacked personal jurisdiction over them because M was not a "similar health care provider" to them as defined by § 52-184c (c). The physician practice group also claimed that the trial court lacked subject matter jurisdiction because it was not a legal entity at the time R received treatment. The trial court granted the motions to dismiss on the ground that it lacked personal jurisdiction over the defendants and rendered judgment thereon, from which the plaintiffs appealed to this court. *Held*:

1. The trial court did not lack subject matter jurisdiction over the claim against the physician practice group; it was irrelevant that the physician practice group was not a legal entity at the time that R was treated, as it was a legal entity at the time the action was brought against it and, therefore, the court had subject matter jurisdiction.

2. The trial court properly dismissed the plaintiffs' action for lack of personal jurisdiction; the plaintiffs' unsupported conclusory allegation that the individual physicians were acting outside the scope of their specialty of internal medicine was insufficient to establish that they were acting as surgeons when they treated R and, therefore, the letter authored by M, a surgeon, was not authored by a "similar health care provider."

Argued March 9—officially released July 21, 2020

### *Procedural History*

Action to recover damages for the defendants' alleged medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Dubay, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Keith Yagaloff*, for the appellants (plaintiffs).

*Thomas Anderson*, with whom, on the brief, was *Cristin E. Sheehan*, for the appellees (defendant Eileen Ramos et al.).

*Michael G. Rigg*, for the appellee (named defendant).

*Laura E. Waltman*, with whom, on the brief, was *R. Cornelius Danaher, Jr.*, for the appellee (defendant Sound Physicians of Connecticut, LLC).

*Opinion*

LAVINE, J. This appeal arises out of a medical malpractice action brought by the plaintiffs, George Labissoniere and Helen Civale, coexecutors of the estate of Robert Labissoniere (decedent), against the defendants, internal medicine physicians, Moe Kyaw, Madhuri Gadiyaram, and Eileen Ramos (collectively, physicians), and their employers, Gaylord Hospital, Inc. (hospital), and Sound Physicians of Connecticut, LLC (Sound Physicians). The plaintiffs appeal from the judgment of the trial court dismissing their claims for lack of personal jurisdiction pursuant to General Statutes § 52-190a.[1] The plaintiffs' central claim on appeal is that the court erred in concluding that the physicians were internists acting within their specialty when they treated the decedent. The plaintiffs therefore assert that the trial court erred in concluding that the opinion letter attached to their complaint, which was written by a surgeon, failed to meet the personal jurisdictional requirement of § 52-190a and the allegations of the complaint did not satisfy the personal jurisdictional exception provided by General Statutes § 52-184c (c).[2] We reject the plaintiffs' claim. Sound Physicians argues on appeal, as an alternative ground for affirmance, that the trial court lacked subject matter jurisdiction over the claim against it because it was not a legal entity at the time that the decedent was treated at the hospital. We disagree that the trial court lacked subject matter jurisdiction. We therefore affirm the judgment dismissing the action for lack of personal jurisdiction over the defendants.

In May, 2015, the plaintiffs instituted a prior action against the physicians and the hospital on the basis of allegations that are substantially similar to those in the present case. In September, 2016, the trial court, *Cobb, J.*, dismissed that action for lack of personal jurisdiction because the opinion letter attached to the plaintiffs' complaint was not authored by a "similar health care provider," as required by § 52-190a. This court affirmed the judgment of dismissal on direct appeal. See *Labissoniere* v. *Gaylord Hospital, Inc.*, 182 Conn. App. 445, 185 A.3d 680 (2018) (*Labissoniere I*).

In *Labissoniere I*, the plaintiffs alleged that the decedent was admitted to the hospital on February 14, 2013, for medical care and rehabilitation following a hip replacement surgery performed at St. Francis Hospital and Medical Center (St. Francis Hospital). Id., 448. The plaintiffs further alleged that, while under the care of the physicians at the hospital, the decedent suffered from "a retroperitoneal hematoma, a postoperative condition that resulted in irreversible nerve damage, as well as hemorrhagic shock and multiorgan failure, requiring the decedent to be transferred back to St. Francis Hospital as an emergency admission on March 11, 2013."[3] Id. The plaintiffs alleged that the physicians were board certified in internal medicine and that they

"provided the decedent with treatment and diagnosis for a postoperative condition which was within the specialty of surgery." In an attempt to comply with § 52-190a (a), the plaintiffs appended to their complaint an opinion letter authored by David A. Mayer, a physician and board certified general surgeon. *Labissoniere* v. *Gaylord Hospital, Inc.*, supra, 182 Conn. App. 448–49.

The physicians and the hospital moved to dismiss the plaintiffs' claims against them for lack of personal jurisdiction on the ground that Mayer was not an internist and, therefore, was not a "similar health care provider," as defined in § 52-184c. Id., 449. The plaintiffs countered that Mayer was a "similar health care provider" pursuant to § 52-184c (c) because the physicians were acting as surgeons during their diagnosis and treatment of the decedent's retroperitoneal hematoma. In ruling on the motion to dismiss, Judge Cobb reasoned that "neither the . . . complaint . . . nor the surgeon's written opinion letter allege[s] or state[s] that the [physicians and the hospital] were acting outside their specialty of internal medicine in treating the [decedent] or that they undertook the diagnosis and treatment of a condition outside of their specialty such that their conduct should be judged against the standards of care applicable to that specialty. Such an allegation and expert opinion is necessary to fall within the exception contained in [§ 52-184c (c)]." (Internal quotation marks omitted.) Id., 451. Accordingly, Judge Cobb dismissed the plaintiffs' complaint for lack of personal jurisdiction.

On appeal in *Labissoniere I*, the plaintiffs claimed, inter alia, that the court erred in determining that the opinion letter did not comply with § 52-190a, and that the exception set forth in § 52-184c (c) was inapplicable. Id., 454. Specifically, the plaintiffs argued that "the exception in § 52-184c (c) applie[d] because they alleged that the treatment and care the physicians rendered to the decedent fell 'within the specialty of surgery' and, therefore, the physicians were acting outside of their specialty of internal medicine." Id., 456. The physicians and the hospital argued in response that "because the plaintiffs did not allege that the physicians were acting outside the scope of their medical specialty of internal medicine, the exception under § 52-184c (c) did not apply, and the plaintiffs were thus obligated to obtain an opinion letter authored by a physician board certified in internal medicine." Id. This court agreed with the physicians and the hospital, determining that Mayer was not a "similar health care provider" because he was not board certified in internal medicine. Id., 455.

This court further concluded that "the decedent was admitted to the hospital for 'medical care and rehabilitation' following a hip replacement, the actual surgical procedure having been performed at another hospital, by an independent surgeon. While under the . . . care

[of the physicians and the hospital], the decedent developed complications, which required treatment and diagnosis by the physicians. Although the physicians appear initially to have misdiagnosed the decedent's postoperative condition, nothing contained in the plaintiffs' complaint or opinion letter suggests that the physicians were not acting as internists. In fact, the crux of the plaintiffs' complaint was that the physicians were negligent in their initial assessment of the decedent's condition, not that the physicians were negligent in performing a surgical procedure." Id., 457. This court thus concluded that "[b]ecause the plaintiffs here have not alleged that the physicians acted outside the scope of their specialty of internal medicine, the exception to the definition of similar health care provider in § 52-184c (c) does not apply. Accordingly, the plaintiffs were required to obtain an opinion letter from an expert who (1) had training and experience in internal medicine, and (2) was board certified in internal medicine." Id., 459. This court, therefore, affirmed the judgment dismissing the action in *Labissoniere I*. Id.

In January, 2017, while *Labissoniere I* was pending in this court, the plaintiffs commenced the present action against the hospital, the physicians, and Sound Physicians. As previously noted, the plaintiffs' complaint contains allegations that are substantially similar to those set forth in *Labissoniere I*. The plaintiffs also appended the same opinion letter authored by Mayer to the complaint, in which Mayer opined that the conduct of the hospital and the physicians fell below the applicable standard of care by failing to timely diagnose a retroperitoneal bleed in the decedent, conduct a CT scan of the decedent, and transfer the decedent back to St. Francis Hospital. The plaintiffs also named Sound Physicians as a defendant and pleaded a count of negligence against it. The plaintiffs further alleged that the physicians were employed by both the hospital and Sound Physicians.

The plaintiffs again alleged that, on February 14, 2013, the decedent was admitted to the hospital for medical care following a previous hip replacement surgery performed at St. Francis Hospital. They further alleged that, while under the care of the defendants, the decedent developed a retroperitoneal hematoma, which resulted in irreversible nerve damage. The plaintiffs alleged that the diagnosis and treatment of that hematoma and the decedent's postsurgical condition were within the specialty of surgery, and not within the specialty of internal medicine. They also alleged that "[t]he defendants lacked the specialized training to determine whether the decedent needed intervention for treating the decedent's condition, a retroperitoneal hematoma. The specialized training required was in the area of general surgery." Moreover, the plaintiffs alleged that neither the hospital nor Sound Physicians had a surgeon available for consultation by the physicians.

The plaintiffs alleged that the decedent's injuries were caused by the negligence of the physicians in failing, inter alia, to timely obtain a consultation with a surgeon, to perform diagnostic imaging, and to diagnose and treat the decedent's condition. The plaintiffs further alleged that the hospital and Sound Physicians were negligent in failing to ensure that the physicians did not commit the alleged negligence.

The hospital filed a motion to dismiss for lack of personal jurisdiction on the ground that the plaintiffs failed to comply with § 52-190a because (1) a board certified surgeon is not a similar healthcare provider, (2) merely alleging that the defendants were acting outside the scope of their specialty did not satisfy the statutory requirements of §§ 52-190a and 52-184c (c), (3) the opinion letter failed to detail Mayer's qualifications and, therefore, failed to show that he was qualified to opine as to the care and treatment rendered by internists, and (4) the plaintiffs were engaging in impermissible forum shopping because *Labissoniere I* was filed in the judicial district of Tolland and the present case was filed in the judicial district of Hartford. The hospital subsequently filed a motion to "preclude [the] plaintiffs from contesting [its] motion to dismiss," arguing that the action was barred by the doctrine of collateral estoppel because the plaintiffs had been afforded a full and fair opportunity to litigate the adequacy of Mayer's opinion letter in *Labissoniere I*.[4] The physicians also filed a motion to dismiss and memorandum of law in support thereof, arguing, among other things, that the plaintiffs had failed to offer an expert opinion authored by a similar health care provider, thus warranting dismissal. Sound Physicians moved to dismiss the count against it by incorporating the same arguments set forth by the hospital and by asserting that the claim against it "should be dismissed because [it] was not a legal entity at the time of the [allegedly negligent treatment of the decedent]." The plaintiffs objected to the defendants' motions on the basis that *Labissoniere I* had been dismissed without prejudice, and, therefore, the present case was not barred by collateral estoppel. The plaintiffs further argued that they had complied with the requirements of § 52-190a, but they did not provide any analytical support for that argument, aside from summarizing case law. The motions were argued before the court, *Dubay, J.*, on October 4, 2018. The plaintiffs asserted at the hearing on the motions that "[t]he issue in the [*Labissoniere I*] complaint was resolved by modifying the pleading to specifically state that it was outside of the medical specialty of the internists."

Subsequently, prompted by Judge Dubay's inquiries at the hearing, both Sound Physicians and the plaintiffs filed supplemental memoranda on the question of subject matter jurisdiction. Sound Physicians argued that "the plaintiffs do not, and cannot, dispute that Sound

Physicians was *not* a business entity at the time of [the decedent's] treatment at [the hospital]" and, therefore, the trial court lacked subject matter jurisdiction over the action asserted against it. (Emphasis in original.) The plaintiffs filed a reply, in which they contested Sound Physicians' argument.

On December 7, 2017, Judge Dubay issued a memorandum of decision, in which he sua sponte imposed a stay pending the outcome of the appeal in *Labissoniere I*. While the stay was in effect, this court affirmed the judgment dismissing *Labissoniere I*. The physicians and the hospital thereafter filed supplemental briefs in support of their motions, arguing that this court's decision in *Labissoniere I* required dismissal of the present action, in which the plaintiffs assert virtually identical allegations as those made in *Labissoniere I*.

On January 23, 2019, Judge Dubay dismissed the plaintiffs' action and issued a memorandum of decision that set forth the following reasoning: " '[A] broad specialty such as internal medicine often overlaps with other medical specialties. . . . [P]hysicians who are board certified in that specialty are often called upon to diagnose and treat a variety of conditions that could fall within a variety of medical specialties.' [*Labissoniere I*, supra, 182 Conn. App. 458]. For this reason, courts have often declined to create scenarios in which health care providers in broad specialties such as internal medicine or emergency medicine may be considered to be working outside their specialty. . . . This is not to say, however, that physicians with broad specialties can never act outside their scope. But given a primary responsibility of an internist or emergency room doctor is to initially diagnose and treat on a wide array of injuries and illnesses, courts will not place negligence in doing so outside their scope, regardless of the type of injury or illness in question.

"In the present case, it is undisputed that the defendant physicians are board certified specialists in internal medicine. Accompanying the plaintiffs' complaint is an opinion letter authored and signed by a board certified general surgeon. To fit the opinion letter [required by] § 52-190a, the plaintiffs rely on the § 52-184c (c) exception.

"The complaint alleges the diagnosis and treatment of the decedent's postsurgical complication was . . . within the specialty of surgery. The complaint also alleges that [the] defendants failed to exercise care and diligence by, among other claims, failing to timely obtain a consult or perform a CT scan. In sum, the defendant [physicians] allegedly failed to appreciate the decedent's injury for what it was and therefore failed to appropriately diagnose and treat him. Importantly, however, the alleged actions (or inactions), regardless of how negligent, fall within the generally accepted practice of internal medicine and are therefore insuffi-

cient to place the defendants outside the scope of their specialty.

"Therefore, given that the defendant physicians are internists who acted within their specialty, the § 52-184c (c) exception does not apply and the plaintiffs are required to present an opinion letter from a physician specializing in internal medicine. Under these circumstances, the court agrees with the defendants that the opinion letter is deficient [pursuant] to § 52-190a, and the motions to dismiss are granted." (Citations omitted.) This appeal followed.

I

We must first address Sound Physicians' claim that the trial court lacked subject matter jurisdiction because it was not a legal entity at the time of the decedent's treatment at the hospital. See *Park National Bank* v. *3333 Main, LLC*, 127 Conn. App. 774, 778, 15 A.3d 1150 (2011) ("Once the question of lack of [subject matter] jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding with the case." (Internal quotation marks omitted.)).

"We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) Id. "[S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . and a judgment rendered without subject matter jurisdiction is void." (Internal quotation marks omitted.) *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 724, 161 A.3d 630 (2017).

As stated previously, Sound Physicians moved in the trial court to dismiss the claim asserted against it on the basis that it was not a legal entity at the time that the physicians treated the decedent at the hospital. Following oral argument in the trial court, Sound Physicians filed a supplemental memorandum of law, in which it argued that "the plaintiffs do not, and cannot, dispute that Sound Physicians was *not* a business entity at the time of [the decedent's] treatment at [the hospital] (February 14, 2013 to March 11, 2013). Sound Physicians was incorporated and commenced [doing] business in the state of Connecticut on April 25, 2013. . . . Accord-

ingly, the plaintiffs' claim against Sound Physicians is void ab initio and should be dismissed." (Emphasis in original.) Judge Dubay dismissed the claim against Sound Physicians for lack of personal jurisdiction but did not address the issue of subject matter jurisdiction in his memorandum of decision.

On appeal, Sound Physicians argues that "to confer subject matter jurisdiction upon the court, each party to the dispute must be an actual legal entity. An entity [without] legal existence can neither sue nor be sued. It is undisputed that [Sound Physicians] was not a legal entity at the time of the decedent's medical treatment at [the hospital]." Sound Physicians cites numerous cases in support of this argument, including *Omerin USA, LLC* v. *Infinity Group*, Superior Court, judicial district of Hartford, Docket No. CV-17-6085890-S (May 24, 2018); *Prout* v. *Mukul Luxury Boutique Hotel & Spa*, Superior Court, judicial district of New Britain, Docket No. CV-15-6029341-S (February 28, 2017); *Washington* v. *Tracey*, Superior Court, judicial district of Hartford, Docket No. CV-10-5034700-S (August 3, 2011); and *State* v. *Lamar Advertising of Hartford*, Superior Court, judicial district of Hartford, Docket No. CV-08-5020325-S (April 5, 2011); among others.

There is a critical distinction between those cases and the present one. In each of the cited cases, the Superior Court dismissed the action for lack of subject matter jurisdiction because the plaintiff brought an action against a defendant in its trade name. In the matter at hand, however, the plaintiffs did not sue Sound Physicians in a trade name. The plaintiffs commenced their action on January 11, 2017, against Sound Physicians of Connecticut, LLC, which was and had been a limited liability company in the state of Connecticut since its registration on April 25, 2013. Sound Physicians' emphasis on the fact that it was not a registered legal entity *at the time of the decedent's treatment* is a red herring as it relates to the issue of subject matter jurisdiction. The relevant question is whether Sound Physicians was a legal entity *at the time that it was sued by the plaintiffs*. Because the plaintiffs sued Sound Physicians, a limited liability company, not a trade name, we reject Sound Physician's alternative ground for affirmance.[5]

We now turn to the remaining issue of whether the trial court correctly concluded that personal jurisdiction over the defendants was lacking.

II

The plaintiffs claim that the trial court erred in dismissing the action for lack of personal jurisdiction by improperly concluding that the defendant physicians were acting within their specialty of internal medicine and, therefore, improperly concluding that the plaintiffs' opinion letter written by a surgeon was deficient

pursuant to § 52-190a and did not fall within the exception created by § 52-184c (c).[6] We are not persuaded.

We begin with the standard of review and the applicable principles of law. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 10, 12 A.3d 865 (2011). "Our Supreme Court has held that the failure of a plaintiff to comply with the statutory requirements of § 52-190a (a) results in a defect in process that implicates the personal jurisdiction of the court. . . . Thus, where such a failure is the stated basis for the granting [of] a motion to dismiss, our review is plenary. . . . Further, to the extent that our review requires us to construe the nature of the cause of action alleged in the complaint, we note that [t]he interpretation of pleadings is always a question of law for the court. . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Citation omitted; internal quotation marks omitted.) *Perry* v. *Valerio*, 167 Conn. App. 734, 739, 143 A.3d 1202 (2016).

"When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 10–11.

"[W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically . . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and to substantial justice between the parties . . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension . . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Internal quotation marks omitted.) *Caron* v. *Connecticut Pathology Group, P.C.*, 187 Conn. App. 555, 564, 202 A.3d 1024, cert. denied, 331 Conn. 922, 206 A.3d 187 (2019).

The plaintiffs argue that the trial court failed to give

due deference to the factual allegations in their complaint in making its determination that the challenged actions by the physicians fell within the specialty of internal medicine. Specifically, they argue that the trial court was obligated to accept as true their allegations that the diagnosis and treatment of the decedent's postsurgical complications were within the specialty of general surgery and outside the specialty of internal medicine. Accordingly, the plaintiffs contend that their opinion letter authored by a surgeon was sufficient to meet the requirements of § 52-190a. The defendants counter that the plaintiffs' mere addition of an allegation that the physicians were acting outside their specialty of internal medicine is insufficient to cure the deficiency that was identified in *Labissoniere I*. The physicians further argue that the complaint is devoid of any factual allegation that the physicians actually rendered surgical care, beyond the conclusory allegation to that effect. We agree with the defendants.

Our resolution of this claim is controlled by this court's decision in *Labissoniere I*, which addressed the same jurisdictional question arising out of the allegations of a complaint that are nearly identical to those in the present case.[7] Accordingly, the narrow question with which we are presented is whether the plaintiffs cured the jurisdictional defect as identified in *Labissoniere I*.[8] The essential allegations in the present complaint are the same as those in *Labissoniere I*. The plaintiffs alleged in both cases that the decedent was admitted to the hospital for medical care following a hip replacement surgery and that the physicians were negligent in failing to timely diagnose the hematoma and consult with a surgeon. The plaintiffs, however, added a conclusory allegation that the physicians had provided the decedent with treatment and diagnosis for a condition that was outside the specialty of internal medicine and within the specialty of surgery, in an attempt to comply with the statutory requirements. The plaintiffs' argument that we must accept as true that new conclusory allegation is unavailing. See *Caron* v. *Connecticut Pathology Group, P.C.*, supra, 187 Conn. App. 564 ("[e]ssential allegations may not be supplied by conjecture or remote implication" (internal quotation marks omitted)). Whether the physicians were acting as internists or surgeons is undoubtedly an essential allegation, and the plaintiffs failed to allege any *facts* from which we can infer that the physicians were indeed acting outside the scope of internal medicine, irrespective of the label that they attach to their claim. We, therefore, decline to accept as true the plaintiffs' unsupported conclusory allegation that the physicians were acting as surgeons.[9]

In light of the foregoing, it is still the case that "nothing contained in the plaintiffs' complaint or opinion letter suggests that the physicians were not acting as internists. In fact, the crux of the plaintiffs' complaint

was that the physicians were negligent in their initial assessment of the decedent's condition, not that the physicians were negligent in performing a surgical procedure." *Labissoniere I*, supra, 182 Conn. App. 457. Accordingly, we conclude that the trial court properly dismissed the plaintiffs' action for lack of personal jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-190a provides in relevant part: "(a) No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death . . . whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . .

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

[2] General Statutes § 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; *provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider.'*" (Emphasis added.)

[3] Neither *Labissoniere I* nor the present action alleges a wrongful death cause of action.

[4] The hospital later amended its motion to dismiss and memorandum of law in support thereof, asserting collateral estoppel as its primary argument for dismissal.

[5] In light of our conclusion herein, we need not address the question of whether a trial court lacks subject matter jurisdiction when a *defendant* is sued in its trade name only. We leave that question open for another day.

[6] Specifically, the plaintiffs claim that the trial court (1) "impermissibly created a new statutory definition of the specialty of internal medicine, and an exception thereto, without the required consideration, deference to the factual allegations in the complaint and the circumstances surrounding [the] decedent's injuries," (2) "erred in finding that the plaintiffs' expert was not a 'similar health care provider' within the meaning of [§§] 52-190a and . . . 52-184c (c)," and (3) erred in dismissing the plaintiffs' claim that the hospital was vicariously and independently liable for the physicians' conduct.

[7] For a more detailed discussion of the jurisdictional question, as it pertains to the broad specialty of internal medicine, see *Labissoniere I*, supra, 182 Conn. App. 445.

[8] One panel of this court may not overrule the decision of a previous panel without en banc consideration. See *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005), and cert. denied, 275 Conn. 905, 882 A.2d 668 (2005).

[9] The plaintiffs' claim brings to mind a story attributed to Abraham Lincoln. He used to refer to a boy who, when asked how many legs his calf would

have if he called a tail a leg, replied "five," to which the response was made that *calling* a tail a leg does not *make* it a leg. A. McClure, "Abe" Lincoln's Yarns and Stories: A Complete Collection of the Funny and Witty Anecdotes that Made Lincoln Famous as America's Greatest Story Teller (1901) p. 409. Similarly, simply claiming that the physicians were acting as surgeons, and not as internists, does not make it so in light of the factual allegations in the complaint.

---