******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NORMAND CARON ET AL. *v.* CONNECTICUT PATHOLOGY GROUP, P.C.
## (AC 40462)

Lavine, Prescott and Harper, Js.

*Syllabus*

The plaintiffs, C and D, sought to recover damages from the defendant medical practice for, inter alia, alleged medical malpractice in connection with the false positive cancer diagnosis of C by pathologists employed by the defendant. C had undergone an endoscopy at a hospital during which a biopsy was performed. Tissue samples from the biopsy were placed on a slide by hospital personnel and sent to the defendant for analysis. The defendant's pathologists incorrectly determined that C had cancer on the basis of their interpretation of a contaminated sample. In bringing their action, the plaintiffs, pursuant to the statute (§ 52-190a [a]) that requires a plaintiff in a medical malpractice action to submit an opinion letter from a similar health care provider as defined by statute (§ 52-184c [c]), attached to their complaint an opinion letter authored by R, a board certified clinical pathologist. Thereafter, the defendant filed a motion to dismiss the action for lack of personal jurisdiction on the ground that the opinion letter was not authored by a similar health care provider as required by § 52-190a (a). Specifically, it argued that because the plaintiffs' complaint alleged negligence in the interpretation of the tissue samples for the purpose of diagnosing cancer, the plaintiffs were required to obtain an opinion letter from an anatomic pathologist, not a clinical pathologist. The trial court granted the defendant's motion to dismiss for lack of personal jurisdiction and rendered judgment thereon. In reaching its decision, the court found that anatomic pathology and clinical pathology are distinct subspecialties of pathology, and interpreted the complaint as alleging negligence by the defendant's pathologists in their interpretation of the tissue samples, which was within the province of anatomic pathology. On that basis, the court concluded that the opinion letter was legally insufficient pursuant to § 52-190a (a) because it was not authored by a similar health care provider. On the plaintiffs' appeal to this court, *held* that the trial court properly granted the defendant's motion to dismiss for lack of personal jurisdiction, as that court properly interpreted the plaintiffs' complaint as having alleged negligence by the pathologists employed by the defendant in their capacity as anatomic pathologists, and, therefore, R's opinion letter was not authored by a similar health care provider as required by § 52-190a (a); because the plaintiffs' complaint sounded in negligence predicated on the pathologists' interpretation of the tissue samples, which fell within the expertise of anatomic pathologists, the plaintiffs were required to attach to their complaint an opinion letter authored by a physician trained, experienced and board certified in anatomic pathology, and because it was undisputed that R had specialized training in clinical, but not anatomic, pathology, his opinion letter was not authored by a similar health care provider as that term is defined in § 52-184c, regardless of his ample experience in clinical pathology.

Argued September 20, 2018—officially released January 29, 2019

*Procedural History*

Action to recover damages for, inter alia, medical malpractice, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Domnarski, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Gerald S. Sack*, with whom, on the brief, was *Jonathan A. Cantor*, for the appellants (plaintiffs).

*James F. Biondo*, with whom, on the brief, was *Diana M. Carlino*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. This appeal arises out of a medical malpractice action brought by the plaintiffs, Normand Caron and Donna Caron,[1] against the defendant, Connecticut Pathology Group, P.C., after a false positive cancer diagnosis. The plaintiffs appeal from the judgment of the trial court dismissing their complaint against the defendant for failure to attach to their complaint a legally sufficient opinion letter authored by a similar health care provider as required by General Statutes § 52-190a (a). On appeal, the plaintiffs, who attached to their complaint an opinion letter authored by a board certified clinical pathologist, claim that the court found that anatomic pathology is a medical specialty distinct from clinical pathology and, on the basis of that finding and the allegations in the complaint, improperly determined that the plaintiffs were required to submit an opinion letter authored by a board certified anatomic pathologist. We disagree and conclude that the court properly granted the defendant's motion to dismiss. Accordingly, we affirm the judgment of the trial court.

The following facts, as alleged in or necessarily implied from the plaintiffs' complaint and affidavits submitted by the plaintiffs and the defendant, and procedural history are relevant to our resolution of the plaintiffs' claim. On March 25, 2014, Caron underwent an endoscopy at Middlesex Hospital in Middletown. During the endoscopy, a biopsy was performed. Tissue samples extracted during the biopsy were placed on a slide by Middlesex Hospital personnel.[2] The slide containing the tissue samples was then sent to the defendant for analysis. On the basis of their interpretation of the samples, physicians employed by the defendant determined that Caron had cancer. Caron was then informed of the diagnosis.

From March 25 to August 15, 2014, Caron underwent medical treatment for cancer. On August 15, 2014, Caron was informed that the sample upon which his cancer diagnosis was based had been contaminated and that he did not, in fact, have cancer.

The plaintiffs commenced the present action on August 30, 2016. In paragraph 6 of their complaint, the plaintiffs alleged: "The conduct of the defendant . . . its agents, servants, and/or employees, including, but not limited to, its pathologists and other professional staff, violated the applicable standard of care . . . in the following ways: (a) in that pathologists employed by [the defendant] failed to consider contamination error in the initial pathology finding or in subsequent consultations when, in the exercise of reasonable care, they could and should have done so; (b) in that pathologists employed by [the defendant] failed to diagnose a contamination error in a timely manner when, in the

exercise of reasonable care, they could and should have done so; (c) in that pathologists employed by [the defendant] failed to perform or request a nucleic acid identification of the tissue from the initial biopsy, when, in the exercise of reasonable care, they could and should have done so; and (d) in that pathologists employed by [the defendant] failed to properly interpret the plaintiff's biopsy sample." The plaintiffs alleged that, as a result of the defendant's negligence, they incurred expenses for medical care and medicines and that Caron suffered physical and emotional injuries.

As required by § 52-190a,[3] the plaintiffs attached a good faith letter and an opinion letter to their complaint. The opinion letter was authored by Samuel Reichberg, a board certified clinical pathologist, who opined that "the erroneous false positive cancer results obtained in [Caron's] biopsy was caused by the failure to follow prevailing standards of care, both in the handling of the specimen by the staff of [the defendant], and in the *interpretation* of the biopsy findings by the [defendant's] pathologists." (Emphasis added.) Reichberg is not board certified as an anatomic pathologist.

On October 26, 2016, the defendant filed a motion to dismiss the action for lack of personal jurisdiction because the opinion letter that the plaintiffs attached to their complaint was not authored by a similar health care provider as required by § 52-190a (a). Specifically, the defendant argued that because their complaint alleged negligence in the interpretation of the samples for the purpose of diagnosing cancer, the plaintiffs were required to obtain an opinion letter from an anatomic pathologist, not a clinical pathologist.

In support of the motion to dismiss, the defendant attached an affidavit from Jonathan Levine, a board certified clinical and anatomic pathologist, averring: "Clinical [p]athology and [a]natomic [p]athology are primary board certifications, each with their own separate and distinct training protocol and board examinations. They are not sub-specialties of one another. . . . Anatomic [p]athology involves the examination of surgical tissue specimens to diagnose disease. . . . Prior to becoming eligible to sit for the [a]natomic [p]athology board examination, a physician must complete specialized training in [a]natomic [p]athology. . . . Clinical pathology involves the direction of divisions of the laboratory which may include the blood bank, clinical chemistry, microbiology, hematology, and other special divisions. . . . Prior to becoming eligible to sit for the [c]linical [p]athology board examination, a physician must complete specialized training in [c]linical [p]athology. . . . The examination of the tissue samples as set forth in their [c]omplaint, concerns the examination of tissue specimens for the purpose of diagnosing cancer, and thus fall within the field of [a]natomic [p]athology."

On December 9, 2016, the plaintiffs filed an objection

to the motion to dismiss. In support of their objection, the plaintiffs submitted an affidavit from Reichberg. Reichberg did not contradict the definitions of clinical and anatomic pathology provided by Levine in his affidavit. Rather, he stated a legal conclusion, averring: "The conduct of the [d]efendant . . . by their pathologists . . . *as alleged in [p]aragraph 6 (a)-(c) of the [p]laintiffs' [c]omplaint*, is not restricted to the subspecialty of [a]natomic [p]athology, but is also the purview of [c]linical [p]athology, a specialty in which both I and the [d]efendant's pathologists have board certification."[4] (Emphasis added.)

On January 17, 2017, the court heard oral argument on the defendant's motion to dismiss. At oral argument, the defendant again explained that clinical pathology and anatomic pathology are separate and distinct specialties. In response, the plaintiffs argued that there was nothing beyond Levine's affidavit to "delineate distinctly the differences between [clinical and anatomic pathology]." They did not, however, provide their own definitions of the specialties. Moreover, neither party moved for an evidentiary hearing at this point, despite the fact that the plaintiffs later argued that such a hearing was necessary to the adjudication of the motion. In fact, the plaintiffs did not move for an evidentiary hearing until after the court granted the defendant's motion to dismiss.

On February 16, 2017, without holding an evidentiary hearing, the court issued a memorandum of decision granting the defendant's motion to dismiss. The court, relying on Levine's affidavit and Stedman's Medical Dictionary, found that anatomic and clinical pathology are distinct subspecialties of pathology. Specifically, the court stated: "Reichberg's affidavit . . . does not contradict [Levine's] characterization [of anatomic and clinical pathology]; indeed, these definitions are in line with those provided in Stedman's Medical Dictionary. . . . Stedman's Medical Dictionary defines anatomic pathology in relevant part as 'the subspecialty of [pathology] that pertains to the gross and microscopic *study of organs and tissue removed for biopsy . . . and also the interpretation of the results of such study*' . . . Stedman's Medical Dictionary (28th Ed. 2006) p. 1442; whereas clinical pathology is defined in relevant part as 'the subspecialty in [pathology] concerned with the *theoretical and technical aspects (i.e. the methods or procedures)* of chemistry . . . and other fields as they pertain to the diagnosis of disease.' . . . Stedman's Medical Dictionary, supra, p. 1442." (Citation omitted; emphasis in original.)

In its memorandum of decision, the court also concluded that the plaintiffs' complaint alleged negligence within the province of anatomic pathology, stating: "What the [plaintiffs] [are] essentially alleging is that the defendant's pathologists, in endeavoring to interpret

the samples, failed to recognize and, consequently, failed to investigate, the possibility that one or more of the samples may have been contaminated and thus failed to ultimately conclude that one of the samples was indeed contaminated. These allegations fall within the defined province of anatomic pathology." On the basis of these conclusions, the court granted the defendant's motion to dismiss.

On February 28, 2017, the plaintiffs filed two motions: a motion to vacate and/or reargue the judgment of dismissal and a motion for an evidentiary hearing.[5] On March 10, 2017, the defendant filed an objection to both of the plaintiffs' motions. The plaintiffs filed a reply to the defendant's objection on March 31, 2017, and, ultimately, after holding oral argument on the motions, the court denied the relief requested by the plaintiffs. This appeal followed.

On appeal, the plaintiffs claim that the court improperly granted the defendant's motion to dismiss on the basis of its determination that the opinion letter was legally insufficient pursuant to § 52-190a (a) because it was not written by a similar health care provider. Specifically, the plaintiffs argue that the court misconstrued their complaint as alleging negligence by the pathologists employed by the defendant in their capacity as anatomic pathologists and that their opinion letter, which was written by a clinical pathologist, was therefore not authored by a similar health care provider, as required by § 52-190a.[6] We disagree.

We begin with our standard of review and other applicable principles of law. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. (Internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 718, 104 A.3d 671 (2014).

"[I]f the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining a jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint.

. . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

"The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and to substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012).

Turning to the substance of the issue before us, "[§] 52-190a (a) provides . . . that, prior to filing a personal injury action against a health care provider, the attorney or party filing the action . . . [must make] a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . . To show the existence of such good faith belief that there has been negligence in the care or treatment of the claimant. . . . To show the existence of such good faith, the claimant or claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in [General Statutes §] 52-184c . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . . Failure to attach to the complaint a legally sufficient opinion letter authored by a similar health care provider mandates dismissal because the court lacks personal jurisdiction over the defendant. . . .

"Section 52-184 defines similar health care provider. Pursuant to that provision, the precise definition of

similar health care provider depends on whether the defendant health care provider is certified by the American board as a specialist, is trained and experienced in the medical specialty or holds himself out as a specialist . . . . Our Supreme Court has construe[d] . . . § 52-184c (c) as establishing [the qualifications of a similar health care provider] when the defendant is board certified, trained and experienced in a medical specialty, or holds himself out as a specialist . . . .

"If the [plaintiff] [alleges] in his complaint that the defendant [is a specialist] . . . the opinion letter . . . ha[s] to be . . . authored by a similar health care provider as defined by § 52-184c (c) . . . . Pursuant to subsection (c) of § 52-184c, a similar health care provider is one who [i]s trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . .

"Our precedent indicates that under § 52-184c (c), it is not enough that an authoring health care provider has familiarity with or knowledge of the relevant standard of care . . . . A similar health care provider must be trained and experienced in the same specialty and certified by the appropriate American board in the same specialty." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Gonzales* v. *Langdon*, 161 Conn. App. 497, 504–505, 128 A.3d 562 (2015).

In the present case, the court interpreted the complaint as alleging negligence by the defendant in its interpretation of the tissue samples, which is within the province of anatomic pathology. We agree and are unable to see, even construed in the manner most favorable to the plaintiffs, how the complaint alleges anything other than negligence in the defendant's interpretation of the tissue samples.

The plaintiffs' complaint clearly revolves around the defendant's interpretation of the tissue samples they received from Middlesex Hospital. The interpretation of the samples falls within the specialty of anatomic pathology. Paragraph 2 of the complaint expressly frames the issue as one of negligent interpretation by the defendant, stating: "On or about March 25, 2014, [Caron] underwent an endoscopy . . . . The biopsy results from the endoscopy were *interpreted* by physicians employed by, and acting in the course of their employment with, [the defendant], as positive for cancer. The *interpretation* of the biopsy samples by the physicians [employed by the defendant] led [Caron's] treaters to conclude that he was suffering from cancer." (Emphasis added.)

Similarly, the specific instances of negligence alleged by the plaintiffs in paragraph 6 (a) through (d) of their complaint all relate to the defendant's interpretation of the tissue samples, which is within the province of anatomic pathology, not clinical pathology. Paragraph

6 (d) of the complaint expressly alleges that the defendant's pathologists "failed to properly *interpret* [Caron's] biopsy sample." (Emphasis added.)

The plaintiffs argue that paragraph 6 (a) through (c) of their complaint alleges negligence by the defendant in its operation of the laboratory, which arguably could be interpreted as falling within the field of clinical pathology. We are not persuaded. Although these subparagraphs do not expressly use the term interpretation, the allegations clearly relate to the standard of care used in analyzing a sample in order to diagnose the presence, if any, and type of disease after it is placed on a slide. This function is within the province of anatomic pathology. Similarly, paragraph 6 (a) alleges that the defendant "failed to consider contamination error in the initial pathology finding . . . ." Because the defendant received the tissue samples after they were handled by Middlesex Hospital, the defendant's consideration of contamination would necessarily occur as part of the defendant's efforts to interpret the slides. Paragraph 6 (b) alleges that the defendant "failed to diagnose a contamination error," which also implicates negligence by the defendant when analyzing the samples, namely, the failure to recognize the signs of contamination. Finally, paragraph 6 (c), which alleges that "pathologists employed by [the defendant] failed to perform or request a nucleic acid identification of the tissue from the initial biopsy," relates to interpretive negligence. This subparagraph essentially alleges that, after looking at the slide and interpreting it, the defendant should have ordered additional testing to clarify abnormalities in the slide. Ordering subsequent testing to clarify errors detected while interpreting a slide would squarely fall within the role of an anatomic pathologist. Paragraph 6 (a) through (c) of the plaintiffs' complaint, therefore, alleges negligence in the defendant's interpretation of the tissue samples.

Nowhere in their complaint do the plaintiffs allege that the defendant operated a laboratory or played any role in the preparation, handling or contamination of the tissue samples, all of which is conduct related to clinical pathology. Indeed, at oral argument on the plaintiffs' motion to vacate and/or reargue, the plaintiffs' counsel stated: "There's nothing in the complaint that I see that directly says that [the defendant ran a laboratory]." Additionally, at oral argument before this court, the plaintiffs were unable to point to any part of their complaint that alleges that the defendant operated a laboratory and, therefore, breached its duty of care in the realm of clinical, rather than anatomic, pathology.

Because the plaintiffs' complaint sounds in negligence predicated on the defendant's interpretation of the tissue samples, and the interpretation of samples falls within the expertise of anatomic pathologists, the plaintiffs were required to attach to their complaint

an opinion letter authored by an anatomic pathologist. Specifically, the plaintiffs were required to attach an opinion letter from a physician (1) trained and experienced in anatomic pathology, and (2) board certified in anatomic pathology. See, e.g., *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 14, 12 A.3d 865 (2011). It is undisputed that Reichberg has specialized training in clinical, not anatomic, pathology. Reichberg averred on two occasions that he is "a board certified clinical pathologist with forty years of experience in clinical laboratory medical and managerial direction." He is not, however, board certified in anatomic pathology.

The plaintiffs argue that Reichberg's opinion letter is sufficient because he is qualified to assess the duty of care of anatomic pathologists. In support of this, Reichberg averred: "I am cognizant of the overall responsibility of the [defendant's] [d]irector for the operation of the whole laboratory, regardless of subspecialty, and I [am] well qualified to assess the operational aspects of the histology laboratory [operated by the defendant]." Again, it is undisputed that Reichberg is not board certified in anatomic pathology and, therefore, regardless of his ample experience in clinical pathology, he is not a similar health care provider as that term is defined by § 52-184c.

On the basis of the foregoing, we conclude that the court properly interpreted the plaintiffs' complaint to allege negligence by the pathologists employed by the defendant in their capacity as anatomic pathologists and that the opinion letter, therefore, was not authored by a similar health care provider, as required by § 52-190a. Accordingly, the court properly dismissed this action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For convenience, all references to Caron in this opinion are to Normand Caron.

[2] The plaintiffs first brought an action against Middlesex Hospital in April, 2016, on the basis of the hospital's handling of the tissue samples. See *Caron* v. *Middlesex Hospital*, Superior Court, judicial district of Middlesex, Docket No. CV-16-6015463-S. Specifically, the plaintiffs alleged that Middlesex Hospital and its employees violated the applicable standards of care by contaminating the slide that contained tissue samples extracted during Caron's biopsy. The same opinion letter used in the present case was attached to the complaint in this prior action. The plaintiffs ultimately settled their case against Middlesex Hospital.

[3] General Statutes § 52-190a (a) provides in relevant part: "No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears

to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . .”

[4] We are not bound by Reichberg's interpretation of the plaintiffs' complaint because the construction of pleadings is a question of law over which this court has plenary review. See, e.g., *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012). Contrary to Reichberg's interpretation, our reading of the complaint reveals that it does not implicate the defendant's handling of the tissue samples.

[5] In support of their motion for an evidentiary hearing, the plaintiffs argued that the affidavits from Reichberg and Levine were contradictory and, therefore, that the court was faced with a factual dispute that needed to be resolved before it could render judgment on the motion to dismiss. Although evidentiary hearings may be necessary when deciding motions to dismiss that involve factual disputes; see *Conboy* v. *State*, 292 Conn. 642, 651–54, 974 A.2d 669 (2009); see also *Roberts* v. *Roberts*, 32 Conn. App. 465, 475, 629 A.2d 1160 (1993) (“when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which opportunity is provided to present evidence and cross-examine adverse witnesses” [internal quotation marks omitted]); such a hearing was not required in the present case because there were no material facts in dispute. In making the factual finding that clinical and anatomic pathology are distinct specialties, the court relied on Levine's affidavit and the definitions in Stedman's Medical Dictionary, neither of which were contested by the plaintiffs until *after* the court decided the motion to dismiss.

[6] The plaintiffs on appeal have not challenged the court's denial of their motion for an evidentiary hearing. Furthermore, there is a question as to whether the plaintiffs waived the right to an evidentiary hearing by failing to request one in a timely manner. See *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 273, 193 A.3d 520 (2018); *Marcus* v. *Cassara*, 142 Conn. App. 352, 357, 66 A.3d 894 (2013) (“[i]t is unfair to the court to leave it with the impression that counsel is in agreement with the court's preference to decide the motion on the papers and then argue on appeal that the court abused its discretion by failing to schedule an evidentiary hearing”). In the present case, the plaintiffs had ample opportunity to request such a hearing, including at the time the court held oral argument on the motion to dismiss. They did not do so, however, until after the court granted the defendant's motion to dismiss.

We caution, however, that when courts are faced with genuine factual disputes in deciding motions to dismiss, an evidentiary hearing is required. See, e.g., *Conboy* v. *State*, 292 Conn. 642, 652–54, 974 A.2d 669 (2009) (“where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts”).

———————————